ECKLES ET AL v. STATE.

[66 South. 987.]

GAMBLING. *Evidence.*

In a prosecution for keeping and exhibiting for the purpose of gaming and for the use of persons desiring to gamble, a game called "high dice," the evidence as set out in the opinion of the court was held to be sufficient to show that the game of "high dice" was one of chance.

APPEAL from the circuit court of Forest county.
HON. P. B. JOHNSON, Judge.
H. L. Eckles and others were convicted of keeping a
gambling game, and appeal.
The facts are fully stated in the opinion of the court.

*J. E. Davis,* for appellant.

*Ross A. Collins,* Assistant Attorney-General for the
state.

REED, J., delivered the opinion of the court.

Appellants, who owned and operated a cigar, tobacco,
and pool room establishment in the city of Hattiesburg
known as "Smoke House," where charged by affidavit
in the court of a justice of the peace with keeping and ex-
hibiting in their place, "for the purpose of gaming and
for the use of persons desiring to gamble, a certain game,
or gambling device, commonly called 'high dice,' consist-
ing then and there of a cup and five dice or 'craps.' "
From their conviction on the trial in the circuit court
on appeal, appellants have prosecuted the appeal to this
court.  They contend that the proof was insufficient to
sustain the conviction, and that the witnesses for the state
in their evidence did not give a sufficiently clear and in-
telligent description of the game or device and its manner
of operation to show that it was a gambling device.
Several witnesses testified to playing the game.  From
their evidence we learn that the player paid twenty-five
cents for the privilege, and stood the chance of winning
one dollar, or of getting nothing.  It appears that the
player selected a certain number, and was entitled to
several "throws" or "rolls" for it; then he counted up
to see whether he lost or won.  Using the words of a
witness:
"You could roll for any number that you wanted to
roll for.  You had so many throws, and you had to make
your number come up a certain number of times."

For a description of the game we quote from the testimony of another witness, a youth nineteen years of age, who testified that he had played the game:

"A. Well, it was just five dice with spots on them, and they would put them in the cup and shake it up and roll them, and you would have to take a certain number on the dice, like the ace or deuce or tray—any one of these numbers on the dice; and if you made that number—I forget how many times or how the roll was or how many times that this number had to be rolled up, but if you made it a certain number of times, you received a dollar's worth in trade. Q. If you didn't make it a certain number of times, what did you do? A. You didn't do nothing. Q. So there was a chance about it. You either did something or nothing. Is that right, Earl? A. Yes, sir. Q. You either got something or you didn't. A. Yes, sir."

One of the appellants testified, and said that it was not the intention of the appellants to operate this device for the purpose of gambling but "merely as a trade stimulator." He further stated that the players could have gotten something every time they rolled, but that they did not seem to understand "how to run it at all," though appellants tried to explain to them. It seems from his testimony that the players did not play the game to get something every time they played, but played it as a gambling game.

The justice of the peace before whom this case was tried, the trial judge, and the jury all thought that what the witnesses described as being played was a gambling device, and we will not disagree with them. It is clear to us that it was a game of hazard. Dice, the very implements used in playing games of chance, were employed. The players hazarded their success or failure upon the accidental circumstance of the numbers appearing upon the dice as they were thrown.

*Affirmed.*